# CHARLESTOWN.

HUTTON *et als. v.* LOCKRIDGE *et als.*

Submitted January 18, 1881—Decided September 29, 1883.

(*SNYDER, JUDGE, Absent.)

1. In a suit brought by judgment-creditors against the judgment-debtor and other judgment and trust creditors, to obtain satisfaction of their several judgments by a sale of the lands owned

---
*Counsel below.

| 22 | 159 |
| 40 | 165 |
| 22 | 159 |
| 42 | 635 |
| 22 | 159 |
| 44 | 724 |
| 22 | 159 |
| 49 | 660 |

by said debtor, and the cause has been properly referred to a commissioner to ascertain and report the several liens thereon, and their respective priorities, and also to ascertain and report the lands owned by said debtor, chargeable therewith, and where such commissioner has made and returned such report and no error appears upon the face thereof, it will be presumed by the Court, that the character, amounts and priorities of the several liens, as well as the lands owned by the judgment-debtor chargeable therewith, are correctly set forth therein "except in so far only, as and as to such parts thereof, as may be objected to by proper exceptions taken thereto before the hearing" of the cause.   (p. 176.)

2. The judgment debtor having been the owner of a large tract of land, charged with a lien of one thousand dollars in favor of his children payable at his death ; and having at different times aliened the same to three different vendees, and to indemnify his second alienee against any loss by reason of said lien upon the portion of said land, having conveyed to a trustee another tract of land ; and the commissioner to whom the cause was referred, having failed to report the amount of said lien, and whether the said three several parcels of said land are chargeable ratably with said lien, or whether same will be first chargeable upon the parcel last aliened, or whether any part thereof will be chargeable on the land conveyed in trust to indemnify said second alienee ; and the court having thereupon decreed that the said land so conveyed in trust *"be sold subject to the lien created thereon by said deed of trust."*   HELD :

   I. That the said lien of one thousand dollars is chargeable upon the parcels of land so aliened, in the inverse order of said alienations, and that the parcels last sold, are first liable.

   II. That the court should have required the plaintiffs to amend their bill by making the children of said judgment-debtor who are entitled to the benefit of said lien, parties defendant thereto, and should have caused said commissioner to ascertain the value of the parcel last aliened, and whether the same will be sufficient to secure the payment of the whole of said lien, and if not what portion thereof will fall on the parcel conveyed to said second alienee and whether any, and if any, what part of the proceeds of the sale of said land so conveyed in trust to indemnify said second alienee ought to be retained for such indemnity.

   III. That it was error in the said circuit court to decree that the said land so conveyed in trust, should be sold subject to the lien created thereon by said deed of trust without first ascertaining the amount of said lien chargeable on said several parcels, and fixing the priorities thereof.

3. The judgment-debtor having excepted to the commissioner's report, because it failed to set off the amount of a demand claimed

by him against the estate of a decedent for the benefit of whose children and widow, one of said judgment-creditors had assigned a large judgment against him of one thousand three hundred and fifty-four dollars and twenty-one cents recovered against him to satisfy the indebtedness of said judgment-creditor to the estate of said decedent, and there being no evidence in the cause showing the amount or justice of his said demand against said decedent, or his right to have same set off against the said judgment against him ; his said exception was properly overruled, and the said commissioner's report in regard thereto was properly confirmed.

4. But the court having overruled the said exception, and *confirmed the said report in all things*, decreed that the "said judgment of one thousand three hundred and fifty-four dollars and twenty-one cents shall be set off against the demand of said judgment-debtor against said decedent as is shown to be due from his estate, in the report of the commissioner reported at this term of the court in the chancery cause of said judgment-debtor, against the administrator of said decedent, &c.," without anything in the record to show the amount or character of the demand, or that there was in fact any connection whatever between the matters involved in said causes, or that said last named cause was heard with, or even read in connection with the cause at bar.   HELD :

That the court erred in setting off the said demand of said judgment-debtor, against the estate of said decedent, against the said judgment of one thousand three hundred and fifty-four dollars and twenty-one cents, recovered as aforesaid against him.   (p. 178.)

5. The commissioner having reported a large debt of two thousand three hundred and thirty-eight dollars and ninety-six cents, against the judgment-debtor, as a specific lien upon one of the tracts of land owned by him, created by a deed of trust thereon, which report was "*in all things confirmed*," the court erred in declaring the same a *general lien* on all the lands owned by said debtor, and decreeing the same with all his other lands, to be sold to satisfy all of the liens reported by said commissioner in the order set forth in his said report, whereas the proceeds of the sale of the said land, subject to said specific liens, after the prior liens thereon are satisfied must be applied to the satisfaction of such specific liens according to their respective priorities, before any part thereof can be applied to the satisfaction of subsequent judgment-liens thereon.   (p. 178.)

The facts of the case are stated in the opinion of the Court.

*R. F. Dennis* for appellant Lockridge.

*A. C. Snyder* for appellees.

WOODS, JUDGE:

J. C. Hutton, A. C. Liggett, Amos Barlow, and Amos Barlow, Henry Barlow and George P. Moore, partners in business under the firm of "Barlow & Moore," plaintiffs, in September, 1877, filed their bill, and subsequently two amended bills in the circuit court of Pocahontas county, against James T. Lockridge, Lanty Lockridge, and a large number of other defendants, alleging in substance that they were judgment and trust-creditors of said James T. Lockridge and Lanty Lockridge, for large amounts, which are set forth in these said bills and exhibits and that many of the other defendants were also judgment and trust-creditors of said James T. Lockridge, many of whose debts are set forth in full, others simply by reference to what appeared to be unsatisfied judgments against him, and alleging that all of said debts were liens upon the lands owned by said James T. Lockridge and praying for a sale of said lands to satisfy said liens and for general relief. As to many of the debts, which were established in the progress of the cause, the character, amounts and priorities thereof only appear in the reports of the commissioner made therein. The description of the lands sought to be charged with said debts, and sold to satisfy the same, is still more meager,—the only allegation in the original bill being "that the defendant, James T. Lockridge, is the owner of a tract of four hundred and twenty acres of land, and several other tracts of land, all of which are described in deeds and certificates of survey, duly attested copies of which are herewith exhibited marked 'C,'" which as found in the printed record, is only the copy of a deed from A. S. Bradshaw to said Lockridge for fifteen acres. The first amended bill, which was filed at April rules, 1878, alleges that Lanty Lockridge, sr., by deed dated January 24, 1857, and April 3, 1858, conveyed to James T. Lockridge a tract of land on Elk river in Pocahontas county containing about one thousand acres, and reserved a lien thereon for one thousand dollars in favor of the children of said James T. Lockridge by his wife then living, and payable at the time of his death; that James T. Lockridge had conveyed all of said "Elk" land as follows: the first parcel to one Wm. J. McLaughlin; afterwards, a second parcel to one Isaac

Moore; and after both the foregoing deeds were recorded, he conveyed the residue to one Wm. D. Moore by deed dated May 26, 1876, and recorded November 10, 1876, and that many of the said judgments against said James T. Lockridge are liens on the "Elk lands," and that the lien of one thousand dollars in favor of the children of said James T. is primarily chargeable upon the parcel conveyed to Wm. D. Moore as that was the last aliened, and prays specially that the court will determine whether all of the said alienees of said James T. of said "Elk" land shall contribute ratably to the satisfaction of the lien of one thousand dollars in favor of said children, or whether said lien is primarily an incumbrance entirely limited to the land conveyed to William D. Moore to the extent of its value, and in case the other lands owned by said James T. be insufficient to satisfy all of said judgment-liens thereon to sell the same and apply the proceeds thereof, after providing for the lien of one thousand dollars, to the satisfaction of said judgment-liens binding the same, and for the same relief as prayed for in the original bill. It further appears from the record in this cause that James T. Lockridge, by deed dated January 25, 1877, conveyed the said tract of four hundred and twenty acres of land to one William Curry, trustee, duly recorded in said county on March 19, 1877, to indemnity and save Isaac Moore harmless from the said lien of one thousand dollars, upon that part of said land which had been conveyed to him by James T. Lockridge by deed dated October 28, 1874, which granted to him *two* tracts of land, one, containing one hundred and sixty-five and one half acres, and the other one hundred and fifty-four and one half acres, but whether both tracts, or only one of them, was part of said "Elk" land, does not appear.

None of the defendants appeared to the original bill, and on the 3d day of October, 1877, the cause was referred to Commissioner Warwick, "to state first, an account of the judgment, and all other liens against the real estate of the defendant James T. Lockridge, and their several priorities, and, second, the various tracts of land of which said Lockridge was seized, together with any other pertinent matters, &c." Under this order, said commissioner returned a report,

on the 10th of April, 1878, showing the existence of a large number of unsatisfied judgments and trust-liens against the lands owned by said Lockridge, and their several priorities. Most of these being undisputed, it is unnecessary to mention. Among the judgments against him presented to, and proved before the commissioner. was one in favor of D. W. Gibson for one hundred and six dollars and fifty-eight cents with interest from the 6th of October, 1870, and fourteen dollars and forty-one cents costs, all of which except the costs, was disallowed. To so much of said report as rejected the principal and interest of said judgment as a valid debt against J. T. Lockridge, Gibson excepted.

The defendants T. L. Campbell and J. N. Campbell, assignees of the defendant Thomas Campbell, of the judgment recovered by the latter against said Lockridge for one thousand three hundred and fifty-four dollars and twenty-one cents, with interest and costs, confessed on the 11th of November, 1870, also excepted to so much of said report as allows to the said Lockridge a credit thereon of two hundred and six dollars and sixty-nine cents paid upon the order of Thomas Campbell to A. W. Rider on the 15th of June, 1871—"for want of sufficient proof of the order, or of its payment or its application to said judgment, and because said order was given after the assignment of said judgment, and after notice thereof and because said Lockridge then was, and still is, indebted to said Thomas Campbell on other accounts in excess of said order." Neither the order, nor the proof offered in support thereof, or of the payment of the money specified therein—nor in fact any evidence in support of any credit, upon any of the debts mentioned in said report, appears in this record. As this same credit of two hundred and six dollars and sixty-nine cents is carried into Commissioner Warwick's report No. 2, hereinafter mentioned, and the court with the order itself and all evidence in support thereof before it allowed said credit, by confirming said "*report No. 2*," in all respects, this Court in the absence of all such evidence will not say that the circuit court erred in doing so, but will hold that the exception, under such circumstances was properly overruled, and the same also is true, in regard to the exception of the defendant D. W. Gibson

as to the rejection of the principal and interest of his said judgment.

The defendant, James T. Lockridge, also filed exceptions to said report for certain reasons, which will be considered hereafter, as the same are in substance renewed in the second report of said commissioner.     At the October term, 1878, of said court the defendants, Preston W. Bennett and James T. Lockridge, filed separate answers to the bill and amended bills to which the plaintiffs replied generally.     It is unnecessary to notice the answer of Bennett as he only claimed the benefit of the judgment reported in his favor, about which there is no controversy.

The answer of Lockridge admits that he is largely indebted to many of the persons named in the original bill; that the indebtedness therein stated is in the main correct; that he has not been able to procure and produce before the commissioner all the papers and other evidence necessary and material for a full defence; avers that he is only the surety in a large judgment of over two thousand dollars recovered against him by the defendant, William Skeen, executor of Henry M. Moffett, deceased, against himself and and the defendant, George B. Moffett; that the lands of George B. Moffett should be first sold, and that suit for that purpose has been brought, and is still pending in the circuit court of Monroe county, and that the said lands have been sold, and a considerable amount of money has been realized therefrom which ought to be applied in payment of said judgment.     He further avers, that upon the debt upon which the large judgment mentioned in the bill was confessed to said Skeen, as the administrator of Lanty Rockridge, sr., deceased, for one thousand four hundred and ten dollars and seventy-five cents, by himself and the defendant, Lanty Lockridge, on the 21st of December, 1875, he was entitled to a credit of five hundred dollars paid many years before the death of said testator, who was his father, by his order and direction to William H. Terrell, to whom his father was then indebted in that amount, and that when he confessed said judgment "*he was unable to find any witness to these facts although he used every exertion to do so.*"     He further avers in substance, that Thomas Campbell assigned the

judgment confessed to him on November 11th, 1870, for one thousand three hundred and fifty-four dollars and twenty-one cents to Moses Moore, as trustee, for the use and benefit of the defendants, T. L. Campbell, I. N. Campbell and Martha Jane Canter, the widow and children of said Amos E. Campbell, deceased, to whose estate as the personal representative thereof, the said Thomas Campbell was largely indebted, and that said judgement so assigned was in effect assets belonging to the estate of said decedent, and was applicable to the payment of his debts; and that Amos E. Campbell at the time of his death, *was largely indebted* to said respondent as the surviving partner of Lockridge & Campbell, and claims that said indebtedness should be applied as a set-off against the judgment of one thousand three hundred and fifty-six dollars and twenty-one cents assigned to the said Moses Moore as aforesaid.

By his said answer, the defendant James T. Lockridge, further avers that the decree obtained against him and the defendant Eleanor Slavens by S. L. Gibson administrator of Jacob Slavens, deceased, for one thousand seven hundred and fifty-six dollars and twenty-seven cents with interest from October 6, 1875, has been partly paid by said Eleanor, and the residue released by the children and distributees of said Jacob Slavens; he further claims that the judgment of D. W. Gibson against him for one hundred and six dollars and fifty-eight cents was attached in his hands and paid over in discharge of the indebtedness of said Gibson to one John J. Gay. He further insists that the said deed of trust executed to the said Curry, trustee, upon the four hundred and twenty acres of land is only an indemnity to Isaac Moore against the lien of one thousand dollars reserved upon said "Elk" land upon the happening of the contingency mentioned therein, and that all of his said alienees of said "Elk" land must *bear ratably any loss* that may be sustained by reason of said lien.

Upon the filing of these answers the circuit court on October, 1878, heard the cause upon the case as then made, and without passing upon the exceptions, recommitted it to Commissioner Warwick with instructions "to take testimony touching the matters presented by said exceptions, and re-

form his report accordingly," which was done, and on April 28, 1879, he returned his second report, designated in the decree herein as "Report No. 2." This differed but little from the first report. The same debts are reported in the same order, except that one small judgment is added; one is changed from class No. 27 in report No. 1 to class No. 7 in report No. 2, and except that in report No. 2, the deed of trust to Wm. Curry for Isaac Moore of one thousand dollars —reported in class No. 19—in report No. 1, is wholly omitted. The only other changes appearing on the face of report No. 2 consist in allowing James T. Lockridge two credits on the said decree of one thousand seven hundred and fifty-six dollars and twenty-seven cents in favor of said Samuel L. Gibson, administrator of Jacob Slaven, amounting in the aggregate at the date of the rendition of said decree to five hundred and eighty-eight dollars and eighty-three cents, and also in allowing a credit upon the judgment of Wm. Skeen, executor of Lanty Lockridge, sr., of one thousand four hundred and ten dollars and seventy-five cents, of five hundred dollars paid Wm. H. Terrell on November 7, 1849, which with seven hundred and eighty-three dollars and sixty-six cents interest accrued thereon, at the date of the confession of said judgment, amounted to the sum of one thousand two hundred and eighty-three dollars and sixty-six cents.

In both of said reports, said commissioner has reported the amounts due upon the two obligations of one thousand eight hundred dollars each, executed by the defendants James T. Lockridge and Lanty Lockridge to William Harper, dated September 9, 1865, and payable respectively on the 1st day of January, 1867 and 1868. Upon the first of these is endorsed a credit of one thousand eight hundred and fifty dollars and seventy-seven cents paid to said Harper on the 20th of October, 1869, and the residue thereof was assigned to the defendants Barlow and Moore. Of the second of said obligations one thousand two hundred and fifty dollars was on the 1st of March, 1871, assigned to the defendant Mary Ann McClintic, and five hundred and fifty dollars thereof on October 2, 1874, was assigned to the defendant Isaac Moore, and the residue, ninety-six dollars and thirty-seven cents was

on November 5, 1874, assigned to the defendant A. T. Barlow, to whom the same was paid by James T. Lockridge. These debts were the joint debts of James T. and Lanty Lockridge. James T. Lockridge conveyed by deed dated October 19, 1869, and recorded the same day, the tract of four hundred and twenty acres in the bill mentioned, to the defendant William Curry in trust, to secure the balance remaining due on said obligations, after deducting a certain amount assumed to be paid by said Lanty Lockridge and " *some other off-sets*" held by James T. Lockridge. What these amounts are, does not appear; neither does it appear what amount was so assumed to be paid by said Lanty thereon; but inasmuch as the whole balance is reported due from James T. Lockridge without objection from him, and said first obligation is subjected to said credit of one thousand eight hundred and fifty dollars and seventy-seven cents, paid on the next day after the date of said deed of trust, it may be presumed that Lanty Lockridge paid said one thousand eight hundred and fifty dollars and seventy-seven cents, and that as between him and James T. he has paid the amount he assumed to pay. These debts are specific liens on said tract of four hundred and twenty acres only, and are not liens upon any other of the lands of James T. Lockridge, and are second in priority thereon. The deed of trust to said William Curry to indemnify said Isaac Moore, is also a specific lien on said four hundred and twenty acres, and is entitled to priority of lien thereon next after the judgment of *James M. Seig's, administrator* v. *James T. Lockridge and Uriah Hevener,* for four hundred and thirty-six dollars and seven cents reported in said report No. 2, as class 21. The amount of this lien is neither ascertained or reported, and the purchaser of said four hundred and twenty acres would therefore take the same subject thereto. To sell said land under such circumstances would greatly depreciate its selling value.

By said report No. 2, said commissioner reported as statement 2d " a statement *showing all the lands owned by James T. Lockridge,* in tracts, or parts of tracts, to-wit: thirty-two acres, one hundred acres, thirty acres, two hundred acres, forty-four and one half acres, one hundred and eighty-four

acres, one hundred and thirty-five acres, forty acres, thirty-three and one fourth acres, four hundred acres, seventy-five acres, one hundred and thirty acres, two hundred acres, and two thousand acres charged to James T. Lockridge and Paul McNeil's estate in land book for 1878. All of the above named tracts or parcels of land were taken from the land book of 1878, for which see transcript from land book marked exhibit T. L. B." Then follows a third statement, in which said commissioner reports, " that all the foregoing judgments (thirty-three in number) are liens upon the lands of James T. Lockridge as mentioned in statement 2d, according to their present classification as to priority." Then follows a fourth statement showing the land owned in fee, and now in possession of James T. Lockridge, with exhibits, of deeds for each tract, reference, to said exhibits—deeds being made for a more complete description to-wit, the following tracts: Two hundred and seventy acres, one hundred and fifty acres, forty-four and one half acres, twenty-two acres, forty-seven acres, one hundred and eighty-four acres, one hundred and thirty-five acres, forty acres, and *part of a tract of four thousand six hundred and seventy-five acres,* one fourth interest in one thousand six hundred acres, fifteen acres more or less, *one undivided interest in a tract of two hundred and sixty acres,* and a tract of one hundred acres;" and then follows a fifth statement, showing what tracts of land had been aliened by James T. Lockridge, which are bound by the liens of certain of said judgments. To this report No. 2 no exceptions were filed by any of the defendants except James T. Lockridge, who excepted thereto, first, because as he alleges, the decree in favor of Samuel L. Gibson, administrator of Jacob G. Slaven deceased, against Eleanor Slaven and himself for one thousand seven hundred and fifty-six dollars and twenty-seven cents (reduced by. credits allowed by said commissioner to eight hundred and twenty-one dollars and sixty-six cents as of the date of the 29th of April, 1879,) was by the heirs of said Jacob G. Slaven, with one exception released to Eleanor Slaven who was their mother, as the bond on which said decree was rendered, had been executed by her to said administrator for the price of a negro girl belonging to her husband's estate pur-

chased by her from said administrator; and because no part of the money specified in said decree was necessary to pay the debts of said decedent, and he filed therewith in support of said exception a paper writing purporting to be such release. This pretended release was set forth and relied upon in his answer, to which a general replication was filed, but no proof whatever was offered in support thereof before the commissioner or filed in the cause; secondly, because the commissioner failed to set-off against the said judgment of Thomas Campbell, the alleged indebtedness of Amos E. Campbell to him as claimed in his answer. No evidence of any kind was produced before the commissioner, or in the cause to show the existence of such a debt, or of the amount thereof by said Lockridge, who has rested this claim upon the allegations in his answer, to which a general replication was filed; and thirdly, because he alleges that, in the judgment recovered by William Skeen, executor of Henry M. Moffett, against George B. Moffett and himself, the proceeds of the sale of the real estate of George B. Moffett in the chancery suit in Monroe county brought by said executor for that purpose is more than sufficient to satisfy the same as alleged in his answer. No evidence was offered to support the grounds of this exception. In this condition of the cause, the circuit court, on the 29th day of April, 1879, heard this cause in connection with the causes of *D. W. Gibson* v. *John J. Gay, &c.,* and of *Samuel B. Campbell, for &c.* v. *Lanty Lockridge &c.,* and pronounced the following decree:

"J. C. Hutton and Others, *Plaintiffs,*
　　　　*vs.*
James T. Lockridge, &c., *Defendants,*
　　　and
D. W. Gibson, *Plaintiff,*
　　　　*vs.*
John J. Gay, &c., *Defendants,*
　　　and
Samuel B. Campbell, for, &c., *Plaintiffs,*
　　　　*vs.*
Lanty Lockridge, &c., *Defendants.*

In Chancery.

"These three causes came on this day to be heard together upon the papers formerly read in each of the said causes, the

first of the above causes upon report No. 2 of Commissioner James W. Warwick, dated April 28, 1879, with three exceptions thereto, and was argued by counsel as to said cause; the second upon the papers formerly read, and the argument of counsel; the third upon the report of Commissioner John Osborne, to which there is no exception, and was argued by counsel. On consideration whereof, it is adjudged, ordered and decreed that the exceptions to report No. 2, in the first of the above causes, of Commissioner J. W. Warwick be and the same are hereby overruled, and said report No. 2 is hereby in all things confirmed; that the several creditors of the defendant, James T. Lockridge, named in said report, recover against the said Lockridge the respective amounts therein found due to them, with interest on each of said amounts from the 29th day of April, 1879, till paid, and that the plaintiffs in each of the above named causes recover of the defendant, Lockridge, their costs in each of said suits; and the court doth further adjudge, order and decree that the said creditors *have liens uppn the lands of the defendant*, Lockridge, in the *order set forth* in said report No. 2; that unless the defendant, James T. Lockridge, or some one for him, shall, within thirty days from this date, pay the said debts and costs of these suits, then R. S. Turk and L. H. Stephenson, who are hereby appointed special commissioners for the purpose, either of whom may act, shall, after advertising the time, place and terms of sale in the *Greenbrier Independent*, a newspaper printed in the town of Lewisburg, as said commissioners shall deem best, for four consecutive weeks, proceed to sell at public auction to the highest bidder, in front of the court house of Pocahontas county, the lands in the bill and proceedings mentioned in the first of the above causes, *now belonging* to the said James T. Lockridge, *subject to the trust deed* to indemnify Isaac Moore—in case the land so subject sells for more than is sufficient to satisfy the incumbrances prior to said trust deed of said Moore —for so much cash in hand as will pay the costs of these suits and the expenses of sale, and for the residue upon a credit of one, two and three years, taking from the purchasers bonds with good security, with interest from day of sale, and the legal title to be retained as ultimate

security; and said commissioners are directed and author-
ized to sell such land as a whole or in such parcels as may
be by them deemed most likely to bring the best price; and
they are authorized to employ a surveyor, if they deem it
advisable, to lay off said lands in separate tracts or parcels,
the expenses of said survey to be taxed in the costs of these
suits.   The said commissioners are directed and authorized
to sell said lands, or so much thereof as they can, privately,
in such parcels as they may deem expedient and advisable,
between this date and the 1st day of July next, subject to
the confirmation of the court, said private sale to be upon
the same terms as the public sale hereinbefore directed; but
if the whole of said lands are not sold by the 1st day of July
next, then the said commissioners are directed to advertise
and sell said lands, publicly or privately, upon the terms or
in the manner hereinbefore directed, and said commissioners
will report their proceedings under this decree to the next
term of this court; but before said commissioners shall
receive any money under this decree they, or the one acting,
shall execute and file with the clerk of this court bond, with
good security, in the penalty of thirty thousand dollars, con-
ditioned according to law.   The right to decree a sale of
any lands which have been aliened by the defendant, James
T. Lockridge, and which are liable for the payment of any of
the debts in Commissioner Warwick's report No. 2, is
reserved until it is ascertained whether the lands not aliened
are sufficient to pay said debts in said report.   The second
of the above causes is continued until the next term of this
court, and the report of Commissioner John Osborne in the
third of the above causes is confirmed, but the debts reported
and allowed in said report, being a part of the debts reported
and allowed in the report No. 2 of Commissioner Warwick
in the first of these causes, and it appearing that the defend-
ant, Lanty Lockridge, is the surety of the defendant, James
T. Lockridge, in all of said debts, except the debt of S. B.
Campbell, for, &c., the court does not deem it proper to
decree a sale of the lands of said defendant, Lanty Lock-
ridge, until it is ascertained that the lands of James T. Lock-
ridge, hereinbefore decreed to be sold, are insufficient to pay
said debts; and it is further adjudged, ordered and decreed

that the judgment of Thomas Campbell, reported in the fourth class of Commissioner Warwick's report No. 2, is to be set-off against the debt of the defendant, James T. Lockridge, as is shown to be due from the estate of Amos E. Campbell, deceased, in the report of Commissioner Warwick, reported at this term of the court in the chancery cause of *James T. Lockridge* v. *Amos E. Campbell's administrator, &c."*

From this decree, the defendant James T. Lockridge appealed, and a *supersedeas* was awarded thereto. He has assigned five errors committed by the court in rendering said decree, which we will consider in the order in which they are presented, all of which may be included in the general allegation that the court erred in overruling his said exceptions, and confirming in all things the said commissioner's report No. 2. The first and second errors assigned may be considered together as the same principles of law are applicable to both; the first alleging that he ought not to have been charged with the payment of said sum of eight hundred and twenty-one dollars and sixty-six cents, ascertained by the commissioner to be the balance remaining unpaid upon the said decree of Samuel L. Gibson, executor of Jacob G. Slaven, against him and Eleanor Slaven for the reasons stated in his said exception; the second alleging that he is erroneously charged with the sum of two thousand four hundred and sixty dollars and forty-six cents, the balance ascertained remaining unpaid upon the said judgment of William Skeen executor of Henry M. Moffett against George B. Moffett and himself as surviving obligors of themselves and Hugh McLaughlin, because the administrator of said McLaughlin is not a party to this suit; for the reason that it *is possible* he may have paid the debt, and because the said Skeen has a suit pending to sell the real estate of said George B. Moffett, who is alleged to be the principal debtor, and that his property being primarily liable ought to be first exhausted. Both of these grounds of error are relied on as matters of defence in the answer of James T. Lockridge. But the plaintiff's general replication directly puts these, and all other matters of his defence in issue, and thus imposes upon him the necessity of proving

them.   This he has not attempted to do, nor does it other-wise appear that any proof thereof was adduced in support of them.   The paper writing purporting to be a release to Eleanor Slaven who is alleged to be the principal debtor, appears in the cause, but the execution thereof is not proved, nor is it proved that the parties whose names are signed thereto are the children or distributees of Jacob G. Sla-ven, nor that the amount of said judgment is not neces-sary for the payment of said decedent's debts, nor that Eleanor was the principal debtor, and Lockridge only her surety therein.   But it does appear by the answer of said Lockridge that the consideration upon which said decree was founded, was the purchase by said Eleanor Slaven from said administrator, of a negro girl, belonging to the estate of his intestate.   In regard to the second error assigned the same absence of proof exists.   It does not appear that George B. Moffett was the principal debtor or that said Lockridge and McLaughlin were his sureties, or that Mc-Laughlin had any estate real or personal, or that any suit was brought by William Skeen as executor of Henry M. Moffett to sell said real estate of George B. Moffett, or that any part of the proceeds of such sale can, or will be applied in discharge of any part of said judgment; we are therefore of opinion that the court did not err in over-ruling the said defendant's exceptions to said report No. 2, charging him with the payment of said debts, nor is the said decree erroneous because the administrator of said McLaugh-lin was not made a party to the suit.   To hold that the rep-resentatives of each deceased obligor, is a necessary party to this suit, would require the settlement of their estates, and the introduction of a large number of defendants, but few of whom would have any interest in the matters involved in this suit.   And this view of the subject does the defendant Lock-ridge no injury, for even if he should be compelled to pay the whole of said debt, and he was only a co-security with McLaughlin, he still has ample remedy against the estate of McLaughlin for any recovery to which he may be-come entitled by paying the whole of said debt.   To the defendant's third assignment of errors, that the court erred in failing to provide for the payment of the four hundred

dollars to Elizabeth Herold mentioned in the deed from
Lanty Lockridge sr. to James T. Lockridge dated the 9th
October, 1852, conveying to him said four hundred and
twenty acres, and other lands reported by said commissioner
it is a sufficient answer to say that no. lien is retained in the
deed upon the lands thereby conveyed to secure the payment
of said four hundred dollars to said Elizabeth Herold. Code
W. Va. ch. 75 § 1.

Not being a lien upon any of said lands, there was no error
in the said decree in failing to provide for its payment;
neither did the court err in overruling the exceptions of the
defendants, T. L. and J. N. Campbell, to the commis-
sioner's reports, for allowing to the defendant, James T.
Lockridge, the credit of two hundred and six dollars and
sixty-nine cents upon the judgment of Thomas Campbell
for one thousand three hundred and fifty-four. dollars and
twenty-one cents.

It is insisted by the appellee, David W. Gibson, that the
decree of April 29, 1879, is erroneous because it over-
ruled his exception to the report of said commissioner which
reported in his favor only the sum of fourteen dollars and
forty-one cents, the amount of his costs upon his judgment of
one hundred and six dollars and forty cents and disallowed
the principal and interest thereof. It is insisted on the part
of James T. Lockridge, that the whole amount thereof
except the said costs, was attached in his hands at the suit of
one John J. Gay, and that upon judgment rendered thereon
against him as a garnishee indebted to said Gibson he paid
the whole amount thereof to the said Gay. While the testi-
mony in the record is not very satisfactory as to the precise
character of the judicial proceeding, on which this judgment
against Lockridge in favor of Gay was obtained, yet it does
appear that such a judgment in favor of Gay was recovered
by him against said Lockridge, and that he paid the said
sum of one hundred and six dollars and fifty-nine cents over
to said Gay. It is evident from the deposition of said D. W.
Gibson, that he knew that some such proceedings were had
against him by said Gay before Justice Waneless in Poca-
hontas county, yet as he has not produced either a copy of
the said proceedings, or offered any other evidence in regard

thereto, it may properly be presumed, that if such proceedings had been produced in evidence they would have justified the said judgment of Gay against said Lockridge as such garnishee. We are therefore of opinion that the circuit court did not err in overruling his said exception. It is insisted by the appellee, Samuel L. Gibson, administrator of J. Slaven, that the circuit court erred to his prejudice in confirming commissioner's report No. 2, which allowed as credits on his decree of one thousand seven hundred and fifty-six dollars and twenty-seven cents the credits of one hundred dollars, paid November 25, 1855, and one hundred and seventy-five dollars, paid March 22, 1857, aggregating five hundred and eighty-eight dollars and eighty-three cents, as of the date of said decree. It is also insisted by the appellant, that the circuit court erred in not causing the lands jointly owned by him, with others to be partitioned, and in failing to ascertain the exact amount of his undivided interest in said two hundred and sixty acres of land and certain other lands, consisting of parts of tracts reported by said commissioner as owned by said appellant. These alleged errors, relied upon by said appellee, S. L. Gibson, administrator, &c., and by the appellant, *appear on the face of said commissioner's report No. 2,* and as no exceptions thereto for that cause were taken in the circuit court, this Court will not reverse the decree of said court for that cause. *Ward* v. *Ward*, 21 W. Va. While it is probable that *in this case* no injury will result to any of the parties, by selling said unascertained part, or interest in said lands, as no one has excepted to said commissioner's report for that cause, yet such action is open to very grave objections, and ought always to be avoided.

But it clearly appears from the transcript of the record in this cause that there was retained in the deeds from Lanty Lockridge sr., conveying to James T. Lockridge, said "Elk land" a lien in favor of his children and payable at his death, of one thousand dollars; and that James T. Lockridge first aliened a parcel thereof to said McLaughlin, but the number of acres and when conveyed does not appear; that afterwards on the 28th day of October, 1874, he conveyed a second parcel thereof to the defendant Isaac Moore, and that afterwards on the 26th day of May, 1876, he con-

veyed the residue thereof to William D. Moore. It further appears that James T. Lockridge to indemnify the said Isaac Moore against any loss by reason of this lien conveyed to said Curry said four hundred and twenty acres of land in trust. This lien is not reported by the commissioner, nor was it determined by the circuit court, whether the same would in the event of its non-payment by said Lockridge, fall ratably upon the whole of said "Elk land," or wholly upon the land conveyed to William D. Moore, to the extent of the value thereof, and then upon the parcel conveyed to Isaac Moore, and then after *its* value should be exhausted, upon the parcel conveyed to McLaughlin. While we are clearly of opinion that in the event of the non-payment thereof by James T. Lockridge, which from the amount of the liens reported seems probable, the whole amount of said lien will fall upon the said several parcels in the inverse order in which they were conveyed. While it is probable that the parcel of said "Elk land," conveyed to William D. Moore, may prove to be a sufficient security for the lien of one thousand dollars, yet as the time of payment is uncertain, and may be remote, and as the said parcel may then be greatly depreciated in value by waste and mismanagement; and as Isaac Moore, by virtue of said deed of trust to Curry, has acquired an ample security against said lien, by charging upon said four hundred and twenty acres of land, whatever portion of said lien may ultimately fall upon that portion of said "*Elk land*" which was conveyed to him, the circuit court ought to have ascertained the amount of said liability which may ultimately rest upon the parcel of said Isaac Moore; or, if the parcel conveyed to said William D. Moore prove to be *sufficient to secure the whole amount of said lien* to the children of James T. Lockridge, it ought to have declared the parcel of Isaac Moore, as well as said four hundred and twenty acres, forever discharged therefrom. But as the children of James T. Lockridge who are entitled to the benefit of said lien of one thousand dollars, are not parties to this suit, the court ought to have required the plaintiffs to amend their bill and make them defendants thereto, as they are directly interested in any proceeding tending to restrict the operation of said lien

to anything less than the whole of said "Elk land." We are therefore of opinion that the circuit court erred in not doing so, and also in decreeing that the said four hundred and twenty acres of land "*be sold, subject to said deed of trust to indemnify said Isaac Moore.*"

By the said decree the said court overruled all the said exceptions to the commissioner's report No. 2, and "*confirmed the same in all things,*" and yet at the conclusion of said decree, the court "adjudged, ordered and decreed that the judgment of Thomas Campbell, reported in the 4th class of Commissioner Warwick's report No. 2, is to be set off against the debt of defendant James T. Lockridge, as is shown to be due from the estate of Amos. E. Campbell, deceased, in the report of Commissioner Warwick reported at this term of the court, in the chancery cause of *James T. Lockridge* v. *Amos E. Campbell's administrator*," &c.

What possible connection there may be between that cause and the case at bar, does not appear in the pleadings or the proofs, nor who were the parties thereto, nor what was the amount of the debt due to said Lockridge from Amos E. Campbell, deceased, neither does it appear that the cause of *Lockridge* v. *Amos E. Campbell's administrator*, &c., was heard with or even read in connection with this cause. Without knowing what was contained in that cause, which was no part of this, that portion of said decree above recited is wholly unwarranted by the pleadings and proofs in this cause, and the same for this cause is erroneous.

By the decree of the 29th of April, 1879, it is "further adjudged that the said creditors have liens upon the lands of the defendant Lockridge in the order set forth in said report No. 2," thus in effect declaring that the said balances due upon said two obligations of one thousand eight hundred dollars each, amounting in the aggregate on that day as shown by said report No. 2 to two thousand three hundred and thirty-eight dollars and ninety-six cents, are *a general lien* on *all* of said lands, whereas by the deed of trust to said Curry the same are specific liens on the said four hundred and twenty acres, as of October 19, 1869, and are not liens on any of said other lands. *This is also an error,* and one which may possibly work great injustice to all subsequent incumbrancers men-

tioned in said report No. 2 from class No. 3 to class No. 28, both inclusive.

We are therefore of opinion and do accordingly adjudge, order and decree that for the errors aforesaid, such parts of the said decree of the circuit court of Pocahontas county, rendered on the 29th of April, 1879, as declare the said debt of two thousand three hundred and thirty-eight dollars and ninety-six cents a general lien on all the lands of said judgment-debtor; and as direct the said demand of said judgment-debtor against the estate of said Amos E. Campbell to be set-off, against the said judgment recovered by said Thomas Campbell for one thousand three hundred and fifty-four dollars and twenty-one cents; and as direct the sale of said lands, and as confirm that portion of said commissioner's report No. 2 as reports that said judgment-debtor is the owner of undivided interests in said two hundred and sixty acres and two thousand acres, and as a part of said four thousand six hundred and seventy-five acres; and as direct the said four hundred and twenty acres to be sold subject to said lien of said deed of trust to indemnify said Isaac Moore, be set aside, reversed and annulled, and that the said decree as to all other matters be affirmed, and that this cause be remanded to said circuit court, with instructions to cause the plaintiffs to amend their said bill by making the said children of James T. Lockridge parties defendant thereto, and to recommit the cause to one of its commissioners to ascertain and report what share or interest is owned by said judgment-debtor in the said tracts of two hundred and sixty, two thousand, and four thousand six hundred and seventy-five acres of land; and also the value of that parcel of said "Elk land" conveyed to William D. Moore, and whether the same will be a sufficient security for the lien of one thousand dollars; and, if not, what portion thereof will be chargeable upon the said parcel conveyed to Isaac Moore and consequently upon said four hundred and twenty acres, and the priority thereof, and what part of any if the proceeds of the sale of said four hundred and twenty acres ought to be retained for the indemnity of Isaac Moore together with any other matters deemed pertinent to the subject, so to be submitted to said commissioner, and to be

further proceeded in according to the principles settled in this opinion, and according to the rules and usages of a court of equity. And it is further adjudged, ordered and decreed that the plaintiffs below do pay to the appellant his costs by him about the prosecution of his appeal and *supersedeas* in this Court, in this behalf expended.

JUDGES JOHNSON AND GREEN CONCURRED.

AFFIRMED IN PART AND REVERSED IN PART. CAUSE RE-MANDED.