# CHARLESTON.

## McGLAUGHLIN *v.* McGRAW *et al.*

Submitted January 25, 1898—Decided April 9, 1898.

1. VENDOR'S LIEN—*Enforcement—Equity Pleading.*

   When suit is brought to enforce a vendor's lien, and sales have been made by the vendee of portions of the land against which the lien is sought to be enforced, and the plaintiff files an amended bill, making the purchasers of such portions parties defendant, but fails to set out in such amended bill the interests of such parties, and the dates of their respective purchases, by exhibiting copies of the conveyances to them, or otherwise, such amended bill is demurrable. (p. 724).

2. VENDOR'S LIEN—*Enforcement—Decree—Error.*

   In such case it is error to decree the sale of the residue of the unsold land remaining in the hands of the vendee until the respective dates of the several subpurchases have been ascertained by the court and set out in the decree, unless it clearly appears that such residue will be sufficient to pay off and discharge the lien so enforced. (p. 723).

Appeal from Circuit Court, Pocahontas County.

Bill by A. M. McGlaughlin against John T. McGraw and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

JOHN T. McGRAW, J. L. HECHMER and FRANK WOODS, for appellants.

JOHN W. HARRIS, for appellee.

McWHORTER, JUDGE:

A. M. McGlaughlin sold to John T. McGraw, and con-

veyed by deed of February 13, 1891, two thousand acres of land, in consideration of forty thousand dollars, of which ten thousand dollars was paid in cash, and a vendor's lien reserved to secure the residue. A controversy having arisen between McGraw and McGlaughlin as to the quantity of land (McGraw having had the same surveyed, and claiming that there was but one thousand four hundred and eighty-five acres), the matter was adjusted by an agreement dated July 9, 1891, made between McGlaughlin and McGraw and J. W. Marshall (who had obtained an interest in said land), under the terms of which agreement McGlaughlin was to convey to them two other tracts of land (one of one hundred and forty-two acres, and the other of one hundred and eighty-one acres), which were to be accepted by them as making good the deficiency, and they were to pay the forty thousand dollars on the terms of the original contract, which agreement was afterwards modified by a further agreement, made December 8, 1891, whereby it was agreed that McGlaughlin should give them credit for two thousand five hundred dollars on account of the purchase money, and they release to him the said two tracts of land. Such payments were made that on the 30th day of September, 1892, there was a balance due on said purchase money from McGraw of nine thousand eight hundred and seventy-one dollars and nineteen cents. By deed of September 28, 1891, said McGraw and Marshall conveyed to the Pocahontas Development Company, in consideration of one hundred thousand dollars, a tract of land including a part of the land conveyed by said McGlaughlin. The said development company laid off a portion of the lands so conveyed to it in lots, with streets and alleys, as shown by a plat filed in the cause, and sold a number of those lots to various persons. To enforce his vendor's lien for the balance of the purchase money, said nine thousand eight hundred and seventy-one dollars and nineteen cents, A. M. McGlaughlin filed his bill in the circuit court of Pocahontas county against the said John T. McGraw, J. W. Marshall, and the Pocahontas Development Company, alleging the facts hereinbefore stated in reference to the sale, the deficiency, and the compromise thereof, and exhibited the deed made by himself and his wife, dated February 13,

1891, to John T. McGraw, and the agreements compromising the deficit. Afterwards the said McGlaughlin filed his amended bill against the same defendants named in the original bill, and Harriett E. Yeager, Martha J. Crouch, E. A. Smith, L. M. McClintick (trustee), C. R. Durbin, Lucy C. Holt, Jacob Ligon Marshall, and others, purchasers of said lots so laid off and sold by the development company, making his original bill a part of the amended bill, and alleging that the said Pocahontas Development Company had sold a number of said lots so laid off by it to the other defendants named in the caption of the amended bill; that the identity and location of the lots so sold by the company, and the order of the alienation thereof, could be easily and readily ascertained by reference to the deeds of conveyance of record, and the map of the town of Marlinton, on file in the office of the clerk of the county court of said county, and that no order of reference to a commissioner would be necessary; and that, if it should become necessary, plaintiff would file copies of said deeds and maps, and, when so filed, prayed that they might be taken as parts of the bill, but that plaintiff did not desire to resort to the lots of these vendees if the remaining portions of said land should be sufficient to pay the unpaid balance of purchase money aforesaid, with interest and costs,—and praying that his vendor's lien might be enforced for the said balance of nine thousand eight hundred and seventy-one dollars and nineteen cents, with interest, and for general relief. The defendants the Pocahontas Development Company, the board of education of Edray district, in said county, and the county court of said county, tendered their demurrers to the amended bill, and defendants McGraw and Marshall filed their demurrers to the original and amended bills. The demurrers were set down for argument, and overruled by the court. The county court filed its answer to the bill, setting up its purchase of the court-house square from the defendant the development company, and showing that plaintiff had agreed, in writing, to release his lien upon said square, and further averring that the land so conveyed to it was the first, in point of date, conveyed by the said Pocahontas Development Company, of the land conveyed to

said company as aforesaid, and that, in the event that the court should decide that the plaintiff is entitled to enforce his lien against the land so conveyed to respondent, all the other lands so conveyed by said McGraw to the company, so far as the same were conveyed by the plaintiff to Mc-Graw, should be first sold, as well as that part which still remains the property of the said McGraw, and not conveyed by said McGraw to the company, and praying for affirmative relief.

On the 7th day of April, 1896, the cause came on to be heard, and was referred to one of the commissioners of the court, with instructions to ascertain and report as follows:

"(1) The location and quantity of such of the land conveyed by the defendants John T. McGraw and Jacob W. Marshall to the Pocahontas Development Company, by deed dated September 28, 1891, as is included in the conveyance from the plaintiff, A. M. McGlaughlin, to said McGraw, dated February 13, 1891, to which end said commissioner shall employ a surveyor to do such surveying as he may deem necessary; and he shall return with his report a plat of the lands aforesaid, showing the situation of the part so conveyed to said company in relation to the entire tract; but he shall not cause that portion of the tract not so conveyed by said McGraw to be surveyed, except to the extent that may be necessary to determine the location and quantity of that which was so conveyed to said company. (2) The location of the lot conveyed to the county court of Pocahontas county for a jail and court house, as claimed in the answer, and the location of that part of said lot embraced by the deed aforesaid from said Mc-Glaughlin to said McGraw; and he shall return with his report a map of said court-house lot, and the approaches thereto; and his report shall show which of said approaches, if any, over the lands so conveyed as aforesaid by said McGlaughlin, are necessary for free ingress and egress to and from said court-house and jail lot. (3) The location and quantity of all such portions of land included within both of the conveyances aforesaid, dated February 13 and September 28, 1891, which on and after the latter date were conveyed by the said Pocahontas Development Com-

pany, with the names of the vendees, and the dates of alienation, in their inverse order; that is to say, commencing with the last alienation, and going back in reverse order to the first. (4) And said commissioner shall report any other matter, specially stated, deemed pertinent by himself, or required by any party to be so stated. And said commissioner shall make report of his proceedings under this decree to the court as early as practicable, and the matter of reference first above mentioned shall be first taken up by him, and report thereon shall be made to this court at its next term."

On June 15, 1896, the commissioner filed his report under the first clause of said decree of reference, and filed therewith the report of Surveyor George Baxter. In his report the commissioner says: "By actual survey it was found that 334½ acres of the land conveyed by the plaintiff, A. M. McGlaughlin, to John T. McGraw, by deed dated February 13, 1891, was included in the conveyance of date September 28, 1891, from McGraw and Marshall to the Pocahontas Development Company, after deducting 1 acre for the graveyard, and 46 poles for the Presbyterian church. This 334½ acres may be reduced 3 or 4 acres on account of a small triangular body of land, noted on Plat No. 1 by a red B, which is reported by the surveyor as, 'May be vacant.' See ·Plat No. 1, and Surveyor's Report No. 1, here filed as parts of this report. As to the location of said 334½ acres, in relation to the entire tract, reference is here made to the plat above filed."

The following exceptions were made to said report:

"The defendants John T. McGraw and Jacob W. Marshall except to the foregoing reports (reserving, however, the right to file other and additional exceptions at a subsequent term of this court): First: Because the said report of Commissioner Scott is in fact what it purports to be,—only a partial and incomplete report, and one not authorized under the order of reference. Second. Because there is no evidence filed with the commissioner's report, and, so far as appears from the said report and the papers filed therewith, none was before the commissioner. There are no papers, filed in this cause, by means of which any of the lines shaded red in said plat of Surveyor Baxter, fil-

ed with said report, could be ascertained or determined. Third. Because the said commissioner, without any facts before him, or reported with his report, ascertains that there are doubts as to the validity of the title of these defendants and of their grantor to parts of the lands attempted to be sold under the lien retained in the deed from McGlaughlin and wife to McGraw. John T. McGraw, Jacob W. Marshall, by John L. Hechmer, Their Counsel."

"The defendants C. R. Durbin and Jacob Ligon Marshall, likewise reserving the right to file other and additional exceptions to the report of Commissioner Scott at a subsequent term of this court, except to the said report for the reasons and upon the grounds stated by defendants McGraw and Marshall, and specifically except to the said report because it does not ascertain what part of the land conveyed by said McGlaughlin to said McGraw was conveyed to them by the said Pocahontas Development Company, nor the order in which the lands so conveyed to them and others can or will be subjected to the payment of said vendor's lien, and that unless said fact be ascertained they cannot protect their interests herein. C. R. Durbin, Jacob Ligon Marshall, by L. M. McClintick and J. L. Hechmer, Their Counsel."

On the 19th day of June, 1896, the cause came on to be heard on the papers formerly read, the exhibits filed with the answer of the county court of Pocahontas county, the report of Commissioner S. B. Scott, marked "No. 1," made pursuant to the decree entered at the preceding term, and filed June 15, 1896, with the joint exceptions of McGraw and Marshall, and the joint exceptions of C. R. Durbin and Jacob Ligon Marshall, and was argued by counsel, whereupon the court ascertained that there was due from the defendants McGraw and Marshall to plaintiff eleven thousand six hundred and thirty-two dollars and fifty cents, as of the 15th day of June, 1896, and that the plaintiff had a lien therefor on the tracts of land conveyed by him to said McGraw by deed of February 13, 1891, in the bills mentioned, subject to any right superior to that of the plaintiff which may have been acquired by other parties in that portion of said land which was conveyed by said John T. McGraw to the Pocahontas Development Company by

deed bearing date September 28, 1891, in the bill mentioned; "and the court not deeming it necessary or material at this time to pass upon the rights or equities of any of the parties in or to that portion of the said land so conveyed as aforesaid to said Pocahontas Development Company, and no reason existing why said lien should not be enforced against the remainder of said land, which is laid down on plat No. 1 of Surveyor Geo. Baxter, returned with said report of Commissioner Scott, amounting to 1,665 acres and 34 poles, more or less,"—it was adjudged that the same be sold, and commissioners were appointed to make the sale. From which decree John T. McGraw, J. W. Marshall, the Pocahontas Development Company, Harriett E. Yeager, Martha J. Crouch, E. A. Smith, L. M. McClintick (trustee), C. R. Durbin, Lucy Holt, and Jacob Ligon Marshall appeal, and assign the following errors:

"Petitioners insist that the court erred in confirming the report of the commissioner, (1) because the evidence upon which it is founded is not reported; (2) because it leaves matters relating to the part reported upon in doubt; (3) because it puts in doubt the title to the land, the area, and the boundary. Second. The court erred in decreeing that the plaintiff had a lien upon the land in the decree described. Third. The court erred in fixing the amount due on account of purchase money. Fourth. The court erred in decreeing a sale of any part of the land before fixing equities and priorities of the parties. Fifth. The court erred in decreeing a sale of the land excluded by the survey from the 334½ acres, but included in the conveyance from McGraw and Marshall to the Pocahontas Development Company. Sixth. The court erred in not sustaining the demurrer to the original and amended bills of complaint, because they do not state the interest of the parties made defendants."

Section 7, chapter 129, Code, as amended by chapter 8, Acts 1895, provides that "the commissioner shall with his report return the evidence filed in the case, including all the evidence taken upon the execution of the reference." In this case the commissioner filed nothing with his report, except a survey made by the surveyor he employed, with two plats (Nos. 1 and 2), showing the surveying he did in

the premises. The surveyor, in his report to the com-
missioner, which is filed with the report of the commis-
sioner, says, "I also did some other surveying, in order to
show the location of the lots conveyed by said Pocahontas
Development Company to other parties since the date of
deed from McGraw and Marshall, dated September 28,
1891, and the approaches to the court house, as shown in.
plat No. 2,"—which plat No. 2, however, does not appear
in the record. This last work done by the surveyor
comes within the purview of the second and third clauses
of the order of reference, the execution of all of which
order should have been completed, to enable the court to
render such decree in this cause as should have been ren-
dered. The parties who purchased lots from the Poca-
hontas Development Company located on the land pur-
chased by said company from McGraw, and which he pur-
chased from the plaintiff, had a right to the information to
be derived from the execution of the second, and especially
of the third, clause of the decree of reference. There is
no evidence in the record to show that such purchasers are
in secure possession of their purchased property, as
against the vendor's lien of plaintiff; nothing to show that
the land purchased by McGraw from plaintiff, and still un-
sold by McGraw and Marshall, is at all sufficient to satisfy
the unpaid portion of said vendor's lien. Plaintiff's
amended bill alleges that, after the conveyance to the
company by McGraw and Marshall, the company laid off a
portion of said land into town lots, and conveyed a number
of said lots to the other defendants named in the caption
of said amended bill, and this was the reason they were
made parties thereto; and, being purchasers of parcels of
said lands, they should be protected as far as possible
against the vendor's lien; and, to have such protection, it.
was necessary to have a report of all purchases by parties
of said lands, with the names of the vendees, and the dates
of their contracts of purchase thereof, commencing with
the last, and going back to the first sale, in inverse order,
so that each purchaser might protect himself, as far as he
could, in causing the property liable before his to bring
the best price it could, because the subsequent purchaser
bears the relation of surety for the prior vendor's lien, to

the extent of the deficit to which his portion of property so purchased by him may be liable after all that is first liable has been exhausted. As to the order in which the lots sold by the development company would be liable for any deficit, it is a matter for investigation and report; and this should have been reported to the court by the commissioner, under the decree of reference, before any sale could properly be entered.  *Harman* v. *Oberdorfer*, 33 Grat. 497; *Renick* v. *Ludington*, 20 W. Va. 512; *Bank* v. *Wilson*, 25 W. Va. 242. True, the commissioner obeyed the order of the court, in first reporting on the first clause of the decree of reference, but failed to make that partial report complete on that point by filing with it the evidence that was, or should have been, taken or supplied, upon which to base his conclusions. The exceptions to the commissioner's report, I think, should be sustained. The commissioner's report should contain such information as to enable the court to ascertain and state in its decree the order of the liability of the various purchasers of lots or parcels from the development company, in case of a deficit in the payment of the vendor's lien after the lands still unsold by McGraw and Marshall shall have been exhausted; but, instead of so providing for the protection of such subpurchasers, the decree says: "And the court not deeming it necessary or material at this time to pass upon the rights or equities of any of the parties in or to that portion of the said land so conveyed as aforesaid to said Pocahontas Development Company, and no reason existing why said lien should not be enforced against the remainder of said land," etc. If it were certain that such residue or remainder of the land would pay off the lien sought to be enforced, it would be immaterial, but there is nothing in the cause to enable the court to arrive at the conclusion that it would do so; hence it becomes very material to those who have made subsequent purchases, for there is nothing in the record assuring such purchasers that their property may not be required to be sold finally to pay off a residue of said lien. And especially does it become material to ascertain the rights and equities of all the parties, in view of the finding of the court that plaintiff has a lien on the tracts of land conveyed by him to said McGraw by deed

dated February 13, 1891, mentioned in the bills, subject to any rights superior to that of the plaintiff which may have been acquired by other parties in that portion of said land which was conveyed by said John T. McGraw and J. W. Marshall to the Pocahontas Development Company by deed bearing date September 28, 1891, and in the bill mentioned. *Hutton* v. *Lockridge*, 22 W. Va. 159; *Bank* v. *Wilson*, 25 W. Va. 242. If the court erred in fixing the amount due on account of the purchase money, it is error of which appellants McGraw and Marshall cannot complain.

The original bill, their demurrer to which was properly overruled, and which bill is taken for confessed as to said appellants, alleges there is a balance due from them of said purchase money of nine thousand eight hundred and seventy-one dollars and nineteen cents, with interest thereon from September 30, 1892, the date of the last payment made by them, which interest to June 15, 1896 (3 years 8 months and 15 days), amounts to two thousand one hundred and ninety-six dollars and thirty-three cents which added to said sum amounts to twelve thousand and sixty-seven dollars and fifty-two cents, making four hundred and thirty-five dollars and two cents more due at that time than is ascertained by said decree. The amended bill was demurrable because it made new parties, who had purchased lots located within, and part of, the land sought to be subjected to the payment of plaintiff's lien, but failed to set forth the interests of the said several defendants, the dates of their respective purchases, etc., by exhibiting copies of the conveyances to them, or otherwise. The original bill is not liable to any such or other objection, so far as I can see, and none has been pointed out, and it is sufficient in law. For the reasons herein set forth the decree complained of is reversed and annulled, and the cause remanded, to be further proceeded with according to the principles herein indicated,

*Reversed.*